# IN THE UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF ILLINOIS
# ROCK ISLAND DIVISION

| | | |
|---|---|---|
| MIKAIL COLLIER | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: 4:14-cv-4103 |
| | ) | |
| v. | ) | Judge Sara Darrow |
| | ) | |
| ROCK ISLAND POLICE OFFICER | ) | Magistrate Judge Jonathan E. Hawley |
| PHIL LEDBETTER; THE CITY OF | ) | |
| ROCK ISLAND; and UNKNOWN | ) | **Jury Trial Demanded** |
| OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Mikail Collier ("Mr. Collier" or "plaintiff"), through counsel, respectfully submits the following response to defendants Phillip Ledbetter and City of Rock Island's (collectively "defendants") motion to strike and dismiss Counts I-III (*Monell* only), V (False Arrest and False Imprisonment), VII (*Respondeat Superior*) and IX (Punitive Damages) of plaintiff's complaint: [1]

## I.   INTRODUCTION

Mr. Collier, a responsible 21-year old African-American man, is a gainfully employed college student who resides in Rock Island. Complaint ("C.") ¶¶ 7, 9. Prior to July 14, 2014, he had no criminal background whatsoever. C. ¶ 8. On or about July 14, 2014 ("the incident"), Rock Island Police Officer Phillip Ledbetter ("Ledbetter"), who is Caucasian, used unnecessary, excessive and unjustifiable force against plaintiff. As detailed below, he caused plaintiff to bleed and suffer a concussion. C. ¶¶ 27, 35, 40. The City of Rock Island ("The City") did not dismiss Ledbetter after he senselessly and brutally beat plaintiff. C. ¶¶ 11, 32.

This Court should deny defendants' motion to dismiss Counts I-III (*Monell* only), VII (Respondeat Superior), and IX (Punitive Damages) of plaintiff's complaint because plaintiff alleges sufficient facts and/or because the claims are otherwise legally sufficient.[2] Plaintiff

---

[1] As a preliminary matter, plaintiff notes that while defendants refer to his *Monell* claims as "Count III," he alleges *Monell* liability in Counts I and II as well. In their request for relief, *only* defendant City of Rock Island moved to dismiss Count I-III on the basis of *Monell*. Defendant officers make no argument whatsoever why Counts I-III should be dismissed against them, nor do they request relief in their Conclusion.

[2] Defendant City of Rock Island requested that the *Monell*-esque paragraphs in Counts IV-VI be stricken and dismissed, even though these claims are based in tort law, not Section 1983. Defendants only argue *Monell* in support of striking and dismissing "Count IV-par.82, Count V-par.82, and Count VI-par.86." As set forth below, plaintiff's *Monell* allegations are sufficient. Further, because *Monell* has no applicability whatsoever to plaintiff's state law claims (Counts IV-VI), any argument defendants made regarding *Monell* does not support striking "Count IV-par.82, Count V-par.82, and Count VI-par.86." This Court should deny the same.

agrees to voluntarily dismiss Count V (False Arrest and False Imprisonment) and Count IX as to the City only but respectfully requests that this Court dismiss the same without prejudice.

## II.     SUMMARY OF FACTS ALLEGED

In the early evening of July 14, 2014, plaintiff and his cousin, Tino Johnson, were stopped by Ledbetter, who had followed them in his car as they walked through their predominantly African-American neighborhood. C. ¶¶ 15, 19.  Ledbetter did not issue plaintiff a ticket or citation and did not ever announce that plaintiff was under arrest.  *Id.*  After twice passing plaintiff and not stopping, Ledbetter stopped his car, got out and addressed plaintiff by saying, "You, come here!" C. ¶ 21 and demanded "What's your name?"  C. ¶ 22. Then he radioed in for additional officers be sent to the scene.  *Id.*  Baffled, plaintiff then turned to his cousin and asked him what was going on. C. ¶ 23.  Ledbetter did not attempt to arrest plaintiff, and plaintiff did not resist any of Officer Ledbetter's words or actions.  C. ¶ 24. Plaintiff had not made and did not at any time make any dangerous or threatening movements, gestures or statements of any kind.  C. ¶ 25. But when plaintiff was turned toward Tino, Ledbetter seized his left wrist, twisted it behind his back, and, with his other arm, grabbed plaintiff's underarm and forcefully slammed plaintiff's body, face down, to the ground.  C. ¶ 26. The impact was to plaintiff's head, which struck the pavement on the sidewalk at the entrance to the north end of the alley.  *Id.* Plaintiff's head began to bleed, and he would later be diagnosed with a concussion as a result of the impact. C. ¶¶ 27, 35. Ledbetter then got on top of plaintiff's back, as he was face down, grabbed both of plaintiff's arms and jammed his knees into plaintiff's neck.  C. ¶ 27.

Four other officers who arrived on the scene shortly thereafter placed handcuffs on plaintiff when he was prone on the ground and then patted him down.  C. ¶ 28.  They did not find any drugs or any weapons of any kind on plaintiff.  *Id.* One of the officers continued to

2

maintain a knee in plaintiff's back while he lay prostrate on the ground and handcuffed. C. ¶ 29. Ledbetter then snatched plaintiff up from a seated to a standing position and said to him, "I owned your ass." C. ¶ 30. The other officers chose not intervene in the actions of Ledbetter, and they condoned and participated in the misconduct toward plaintiff. C. ¶33.

Plaintiff's head throbbed with constant pain and headache for 10 days following the incident, even though he was taking the pain relief medication that doctors had prescribed for him. C. ¶ 37. Ever since Ledbetter's assault and battery, plaintiff has felt anxious, nervous, and depressed. C. ¶ 39. He has nightmares about the police stopping him and slamming his head. *Id.* Five months after the incident, plaintiff continues to have headaches on a regular basis. C. ¶ 40. He continues to need prescribed medications. *Id.* His left eye twitches inexplicably. *Id.* A bruise is still visible on plaintiff's head. *Id.* Whenever plaintiff sees the police, his stomach drops, and he feels extremely nervous. C. ¶ 41. Plaintiff, a law-abiding citizen, has had little-to-no prior encounters with police. *Id.* He had no previous physical, mental or emotional health problems. *Id.* His stress and other persisting symptoms stem wholly from the incident. *Id.*

The City has a pervasive practice and custom of failing to adequately train, supervise, control, discipline and dismiss its officers concerning the use of excessive force, as detailed below. C. ¶ 44.[3]

---

[3] The City also has a policy of inadequately reporting, reviewing and investigating use of force and excessive force incidents. *Id.* Ledbetter, other defendant officers and other Rock Island police officers have engaged in and continue to engage in a pattern of using unreasonable and/or excessive force similar to that used against plaintiff. C. ¶ 45. The City has persistently failed to respond, take corrective action, or dismiss officers such as Ledbetter who use unreasonable and/or excessive force. *Id.* By failing to adequately review, discipline and dismiss officers for prior instances of misconduct similar to that committed against plaintiff, the City of Rock Island leads police officers to believe with confidence that their actions will not be scrutinized, investigated or disciplined by RIPD. C. ¶ 49. This directly encourages and authorizes future abuses, like the one involving Ledbetter and plaintiff, giving officers license to use excessive force when and where they want. *Id.*
      The City also has a pervasive, long-standing practice and custom of (1) condoning and authorizing RIPD's pattern and practice of sending white officers and/or all-white teams of officers into predominantly African-American or minority neighborhoods, C. ¶ 46; (2) failing to hire and employ an

3

### III. STANDARDS FOR DECIDING A MOTION TO DISMISS

To survive a motion to dismiss, a complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).[4]

A plaintiff may state a claim of municipal liability under 42 U.S.C. §1983 ("Section 1983") by alleging that the city had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. Ill. 2000). One way of proving this, "failure-to-train," is sufficiently alleged where a plaintiff pleads that the city has "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388-389 (1989). To properly plead deliberate indifference, the plaintiff may allege that the City has a custom or policy that contributed to his injury. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).

---

adequate number of African-American police officers to patrol and police predominantly African-American neighborhoods in a city with a sizeable African-American populace, C. ¶ 46; and (3) condoning and authorizing RIPD officers' pattern and practice of using excessive force more frequently and egregiously against African-Americans and other minorities, C. ¶ 48. The City knows or reasonably should know that these customs and practices increase racial tensions, community distrust, and the likelihood that officers will use unreasonable and/or excessive force in already-tense and confrontational situations. C. ¶ 47.

Final city policy-makers are aware of, condone and facilitate, by their inaction, a "code of silence" within the RIPD, which further serves to ratify officers' misconduct and authorize it in the future. C. ¶ 50. Police officers routinely fail to report instances of police misconduct, lie to protect each other from punishment, and go unpunished for doing so. *Id.* The defendant officers' conduct toward plaintiff, including their failure to intervene, was the direct result of the RIPD's "code of silence" regarding the use unreasonable and/or excessive force, including the use of unreasonable and/or excessive force against minorities. *Id.*

[4] Well-pleaded allegations must be taken as true, and the court must "draw all reasonable inferences in [plaintiff's] favor from those allegations." *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

4

In *Leatherman v. Tarrant County Narcotics Intelligence & Coordinate Unit*, 507 U.S. 163, 168 (1993), the Supreme Court, in a unanimous and strongly worded opinion, held that the heightened-pleading requirement lower courts had imposed on Section 1983 litigants in failure to train cases was "impossible to square" with notice pleading requirements. Under *Leatherman*, a plaintiff simply needs to give defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* In the Seventh Circuit, *Leatherman* remains good law after *Twombly* and *Iqbal*. *See Knapp v. City of Markham*, No. 1:11-CV-00093-DLB PC, 2011 WL 3489788, at *5 (N.D. Ill. Aug. 9, 2011) (expressly rejecting heightened pleading standards for municipal liability and denying motion to dismiss where complaint alleged that city had policy of discriminating against employees based on race); and *Riley v. County of Cook*, 682 F.Supp.2d 856, 861, 862 (N.D. Ill. 2010) (affirming *Leatherman*: "an official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing").[5] *See also Roberts v.*

---

[5] *Jordan v. Diaz*, No. 10 C 1178, 2010 WL 5476758, at *4 (N.D. Ill. Dec. 23, 2010) (affirming *Leatherman*: "No heightened pleading standard applies to *Monell* claims"); *Aleman v. Dart*, No. 09-cv-6049, 2010 WL 4876720, at *7 (N.D. Ill. Nov. 23, 2010) ("Plaintiff is not required to meet a heightened pleading standard for a §1983 official-capacity claim. . . Thus, Plaintiff need not plead particular facts upon which he bases his claim of an official policy or custom, and a 'short and plain statement' that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss"); *Diaz v. Hart*, No. 08 C 5621, 2010 WL 849654, at *7 (N.D. Ill. Mar. 8, 2010) ("courts in this district have continued to apply *Leatherman*'s holding that plaintiffs are not required to plead specific facts to prove the existence of a municipal policy"); *Gilbert ex rel. James v. Ross*, No. 09-cv-2339, 2010 WL 145789, at *2, *3 (N.D. Ill. Jan. 11, 2010) (affirming *Leatherman*: "Plaintiff need not plead particular facts upon which he bases his claim of an official policy or custom, and a 'short and plain statement' that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss" where plaintiff alleged that the municipality "directly encourage[d] the misconduct at issue here by a failure to train, supervise, and control officers"); *Gardunio v. Town of Cicero*, No. 09-CV-1162, 2009 WL 4506318, at *9 (N.D. Ill. Nov. 30, 2009) (affirming *Leatherman*: "even post-*Twombly,* Plaintiff is required only 'to allege enough facts to state a claim to relief that is plausible on its face'"); *Winchester v. Marketti*, No. 11 CV 9224, 2012 WL 2076375, at *4 & n.3 (N.D. Ill. June 8, 2012) (balancing *Leatherman* with *Iqbal*); *Jones v. Bremen High Sch. Dist. 228,* 2009 WL 537073, at *4 (N.D.Ill. Mar. 4, 2009) (under *Twombly,* Plaintiff "is not required to plead with specificity the existence of a municipal policy").

*City of Indianapolis*, No. 1:10-cv-1436-TWP-DML, 2011 WL 2443672, at *2, *3 (S.D. Ind. June 14, 2011) ("significantly, even after *Twombly* and *Iqbal*, district courts in the Seventh Circuit have affirmed [the *Leatherman*] holding that plaintiffs are not required to plead specific facts to prove the existence of a municipal policy.")[6]

## IV. ARGUMENT

### A. Counts I-III Properly Plead Municipal Liability Under *Monell*

Plaintiff has properly stated a cause of action in Counts I-III under *Leatherman* and its progeny. Mr. Collier alleges that The City has "pervasive, long-standing practices and customs relating to its officers' use of excessive and unreasonable force," C. ¶ 43; "a pervasive custom and practice of failing to adequately train, supervise, control, discipline and dismiss its officers concerning the use of excessive force," C. ¶ 44; "a policy of inadequately reporting, reviewing and investigating use of force and excessive force incidents," *id.*; and that "Rock Island police officers have engaged in and continue to engage in a pattern of using unreasonable and/or excessive force similar to that used against plaintiff [and The City] has persistently failed to respond [and] take adequate corrective action" against such officers, C. ¶ 45. Under *Leatherman*, these allegations give The City fair notice of plaintiff's municipal liability claims, and the specific, factual grounds on which they rest, as detailed below. *See* 507 U.S. at 168.

### i. Plaintiff's *Monell* Allegations are Supported with Facts

---

[6] District courts in other circuits have adopted the same reasoning and affirmed *Leatherman* after *Twombly* and *Iqbal*. *See, e.g., Charles v. Galliano*, No. 10-811, 2010 WL 3430519, at *6 (E.D. La. Aug. 26, 2010) (denying motion to dismiss because "boilerplate allegations of inadequate municipal policies or customs are generally sufficient"); *Miller v. City of Plymouth*, 2010 U.S. Dist. LEXIS 35686, 2010 WL 1474205, at *6 (N.D. Ind. April 9, 2010); *Dwyer v. City of Corinth, Tex.*, No. 4:09-CV-198, 2009 WL 3856989, at *8, *9 (E.D. Tex. Nov. 17, 2009) ("Plaintiff need not set forth all the details of his case against a municipality under section 1983 at the pleadings stage" and accepting "boilerplate allegations" of a custom or policy of "poor training and discipline of law enforcement officers"); *Carnes v. Salvino*, No. CV-08-1846-PHX-GMS, 2009 WL 2568643, at *5 (D. Ariz. Aug. 18, 2009) (citing with favor cases "that have applied the 'bare allegations' standard post-*Twombly*.")

Plaintiff's *Monell* allegations in support of Counts I-III are sufficient. Allegations are not conclusory, and properly state a claim of municipal liability, when a plaintiff pleads, specifically, how the officer(s) mistreated him and, generally, how the city "directly encourage[d] the misconduct at issue here by a failure to train, supervise, and control officers." *Gilbert*, 2010 WL 145789, at *2; *Tugle v. Stith*, No. 10-849-GPM, 2011 WL 1627332, at *2 (S.D. Ill. Apr. 28, 2011) (denying motion to dismiss where plaintiff alleged that the "Village 'had customs, policies, and practices that violated the [Fourth Amendment] rights of its arrestees' including, *inter alia,* failure to 'properly train, investigate, discipline, and/or fire Officer Stith'"); *Aleman*, 2010 WL 4876720, at *7 (denying motion to dismiss where "Plaintiff allege[d] that the customs, policies, and practices of the institutional Defendants caused Plaintiff's harm" and detailed his own harm); and *Anderson v. City of Blue Island*, No. 09C5158, 2010 WL 1710761, at *2 (N.D. Ill. Apr. 28, 2010).[7]

In this case, plaintiff specifically and causally ties The City's many unlawful policies and customs to his own detailed mistreatment and harm. C. ¶ 52, 9, 13, 24-27, 30, 33, 35, 43-51 (detailed below); *Aleman*, 2010 WL 4876720, at *7; *Anderson*, 2010 WL 1710761, at *2; *Maldonado*, 2010 WL 1484235, at *3,*4. Plaintiff alleges that The City "directly encourage[d] the misconduct at issue by failing to train, supervise and control officers" in at least five ways, detailed below. *See Gilbert*, 2010 WL 145789, at *2.

First, plaintiff alleges that The City has a "custom of condoning and authorizing RIPD officers' pattern and practice of using excessive force more frequently and egregiously

---

[7] *See also Maldonado v. Racine County*, No. 09-C-1173, 2010 WL 1484235, at *3,*4 (E.D.Wis. Apr. 12, 2010) ("In the present case, Maldonado does more than merely recite the elements of a § 1983 claim. She alleges that she was harmed by a specific policy or custom of Racine"); *Geist v. Ammary*, No. 11–07532, 2012 WL 6762010, *7 (E.D. Pa. Dec. 20, 2012) ("These allegations are not merely a recitation of the elements of a *Monell* claim, but point towards specific failings in training that led to the specific violation of constitutional rights here alleged"); *Miller v. City of Plymouth*, No. 2:09-CV-205 JVB, 2010 WL 1474205, at *4, *6 (N.D. Ind. Apr. 9, 2010).

7

against African-Americans and other minorities." C. ¶ 48.  Plaintiff ties this to his own harm by alleging that Ledbetter, a white police officer, stopped plaintiff, a young African-American man, in an African-American neighborhood, not to give him a ticket initially, but to provoke a conflict. C. ¶¶ 9, 13, 30.  Ledbetter unnecessarily roughed the plaintiff up, slamming his body and head to the ground and jamming his knees into plaintiff's neck, even though plaintiff did "not resist any of Ledbetter's words or actions" and had "not made and did not make any dangerous or threatening movements, gestures, or statements of any kind whatsoever" which would have justified the use of force; Ledbetter then told plaintiff that "I owned your ass." C. ¶¶ 24-27.  Taken together, these allegations shed light on how The City fails to protect, and is deliberately indifferent to the rights of African-American citizens by authorizing and condoning the disproportionate use of excessive force against minorities.  *See* C. ¶ 51, 67 ("defendants would not have acted in the same manner toward plaintiff on July 14, 2014 if plaintiff had been white").

       Second, plaintiff alleges that The City has a custom of "sending white officers and/or all-white teams of officers into predominantly African-American or minority neighborhoods," C. ¶ 46, and "failing to hire and employ an adequate number of African-American police officers to patrol and police predominantly African-American neighborhoods in a city with a sizeable African-American populace." C. ¶ 47.  Plaintiff alleges that these policies serve to increase "the likelihood that officers will use unreasonable and/or excessive force in already-tense and confrontational situations." C. ¶ 46.  Plaintiff causally ties these customs and the resulting "racial tensions" and "community distrust," C. ¶ 46, to his own harm when he alleges that, solely due to the Ledbetter incident, "[w]henever plaintiff sees the police, his stomach drops, and he feels extremely nervous," C. ¶ 41, and that "he has nightmares about the

8

police stopping him and slamming his head, C. ¶ 39. Clearly, The City's customs and policies of sending all-white officers into African-American communities, who in turn use excessive force disproportionately against African-Americans, C. ¶ 46, has specifically harmed plaintiff, who is "a law-abiding [African-American] citizen" who had previously had "little-to no prior encounters with police," C. ¶ 41.

Third, plaintiff alleges that The City's custom of always sending all-white officers into predominantly African-American neighborhoods demonstrates deliberate indifference to its white officers' disproportionate use of derogatory language and excessive force against law-abiding African-American citizens. *See* C. ¶¶ 46-47; 51; 55; 11 (Ledbetter was not dismissed following the incident). Plaintiff specifically alleges how he suffered from this custom when Ledbetter slammed and concussed him for no reason whatsoever, physically dominated him by jamming his knees into plaintiff's neck and by later snatching him up and using the derogatory and racially-charged phrase "I owned your ass." C. ¶¶ 24-27, 30, 35.

Fourth, plaintiff alleges that The City's refusal to investigate, discipline, and dismiss officers who use unnecessary and excessive force against African-American citizens "leads officers to believe with confidence that their actions will not be scrutinized, investigated or disciplined by RIPD." C. ¶ 49. This Court must draw the reasonable inference that Ledbetter did not think his actions would be scrutinized when, in presence of an independent witness, C. ¶¶ 20-22, and his fellow officers, C. ¶ 28, he arrogantly told plaintiff "I owned your ass," C. ¶ 30, slammed plaintiff's head until it bled, C. ¶¶ 26-27, and gave plaintiff a concussion, C. ¶ 35. *See Abcarian*, 617 F.3d at 933. Because plaintiff alleges the facts of his open mistreatment by Ledbetter and ascribes them to The City's policies which he alleges with facts, he has properly given "fair notice" to The City of his *Monell* claims. *See Thomas*, 800 F.Supp.2d at 843-844

9

(allegations that provide proper notice under *Leatherman* include "misconduct that occurred in the open"); *see also Bryant v. Jones*, 575 F.3d 1281, 1299-1300 (11th Cir. 2009) ("his discriminatory intent was further made plain by his open expressions of racial animus").

> Fifth, plaintiff alleges that
>
> final city policy-makers are aware of, condone and facilitate, by their inaction, a "code of silence" within the RIPD, which further serves to ratify officers' misconduct and authorize it in the future. Police officers routinely fail to report instances of police misconduct, lie to protect each other from punishment, and go unpunished for doing so.

C. ¶ 50. Plaintiff specifically alleges that he suffered from this "code of silence" when the "other defendant officers chose not to attempt to control or intervene in the actions of Officer Ledbetter." C. ¶¶ 33, 50 ("defendant officers' conduct toward plaintiff, including their failure to intervene, was the direct result of the RIPD's code of silence"). Further still, as The City did not dismiss Ledbetter, C. ¶ 11, Ledbetter benefited from and continues to benefit from The City's "code of silence," C. ¶¶ 33, 50, at the expense of plaintiff and other African-American citizens in Rock Island, C. ¶¶ 48-49 ("this directly encourages and authorizes future abuses, like the ones involving plaintiff, giving officers license to use excessive force when and where they want" "more frequently and egregiously against African-Americans"). Because plaintiff specifically ties his own detailed harm to his allegations of The City's policies in at least five ways, in Counts I-III he has properly stated a factual, non-conclusory claim of municipal liability under *Leatherman*. *See Gilbert*, 2010 WL 145789, at *2, *3.

### ii. Alternatively, Even If Plaintiff's Allegations Are Conclusory, They State a Claim

Plaintiff's *Monell* allegations are not conclusory; however, even if they were, plaintiff has satisfied the pleading standards under *Leatherman* and current Seventh Circuit law, which allow him to allege conclusory statements to establish a cause of action for municipal

10

liability. *McCormick,* 230 F.3d at 325 (7th Cir.2000) (error to dismiss *Monell* claims on the ground that they were too conclusory); *Wilson*, 2009 WL 3242300, at *3 (N.D. Ill. Oct. 7, 2009); and *Roberts*, No. 1:10-cv-1436-TWP-DML, 2011 WL 2443672, at *2, *3.  In this case, plaintiff is only required to put The City on notice of the basis of his claims. *Leatherman*, 507 U.S. at 168; *Riley*, 682 F.Supp.2d at 862 (N.D. Ill. 2010) ("an official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing.")[8]  Among many other reasons, this "lenient pleading standard" applies to failure to train claims because plaintiff has "no realistic way to learn about a municipality's training programs without discovery." *Michael v. County of Nassau*, No. 09-CV-5200, 2010 WL 3237143, at *4, *5 & n.2 (E.D.N.Y. Aug. 11, 2010) ; *Wiek v. Keane*, No. 09 CV 920, 2010 WL 1976870, at *4 (N.D. Ill. May 12, 2010) ("There is nothing more Wiek can allege. He is not required to provide extrinsic evidence that a policy existed"); *Wilson v. City of Chicago*, No. 09 C 2477, 2009 WL 3242300, at *3 (N.D. Ill. Oct. 7, 2009) ("a plaintiff should be given the opportunity to develop an evidentiary record to determine whether he can provide support for his claims") (citing *McCormick*); *Maldonado*, 2010 WL 1484235, at *3,*4 (denying motion to dismiss because actual evidence of municipal policy or custom is not required until the summary judgment stage).[9]

---

[8] As detailed above, plaintiff's allegations give defendants fair notice under *Leatherman* and its progeny.

[9] District courts in other circuits agree.  *See Goode v. Newton*, No. 3:12cv754 (JBA), 2013 WL 1087549, *7, *8 (D. Conn. Mar. 14, 2013); *Geist*, 2012 WL 6762010, *7 ("Plaintiff is entitled to discovery to determine whether her allegations of inadequate training and corrupt policy are true"); *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2012 WL 3871517, *3-*5 (S.D.N.Y. Sept. 6, 2012); *Ford v. City of Philadelphia*, No. 12–2160, 2012 WL 3030161, *6, *7 (E.D. Pa. July 24, 2012) ("In order for Ford to prevail on his municipal liability claim, he needs to show that the City was deliberately indifferent 'to the rights of people with whom the police c[a]me into contact.' To properly do so, Ford must establish that the City had a pattern of engaging in constitutional violations such as those present in this case, and that this pattern lead to his eventual constitutional injuries. . . Ford cannot, however, prove such a pattern without a sufficient period of discovery to adduce this evidence. . . As such, Plaintiff's claim that the City maintained a policy that failed to properly train, supervise, investigate, or discipline its officers is still too

Indeed, a recent case from the Northern District of Illinois denied a city's motion to dismiss where the city argued that plaintiffs' allegations were "insufficient because they make broad and generalized allegations without identifying the specific custom, policy or practice of which they complain." *Adams v. City of Chicago*, No. 06 C 4856, 2011 WL 4628703, at *1, *2 (N.D. Ill. Sept. 29, 2011).  The Court found those allegations, which were fewer and less specific than Mr. Collier's allegations here, "sufficient to satisfy *Twombly* and its progeny."  *Id.*  Notably, although Mr. Collier pleaded allegations above and beyond those found in *Adams*, the factual overlap in the two cases is striking.  In *Adams*,

> Plaintiffs allege that Defendant City of Chicago violated their constitutional rights pursuant to widespread practices [which Mr. Collier alleges in C. ¶¶ 43, 54]: (1) that the City failed to properly train, supervise, discipline, and control its officers [which Mr. Collier alleges in C. ¶ 44]; (2) that the City failed to identify and respond to officers who repeatedly engaged in patterns of misconduct [which Mr. Collier alleges in C. ¶¶ 45, 49] including the Special Operations Section; (3) that through its inaction the City condoned and facilitated a 'code of silence' in the Chicago Police Department [which Mr. Collier alleges in C. ¶ 50]; and (4) that Defendant Officers had and continued to engage in a pattern of misconduct similar to the misconduct against Plaintiffs [which Mr. Collier alleges in C. ¶ 49]. Further, Plaintiffs allege that these practices were known by municipal policy-makers of the City both before and after Plaintiffs' arrests [which Mr. Collier alleges in C. ¶ 50].

*Id.*  Indeed, while the *Adams* Court found these allegations alone "sufficient to satisfy *Twombly* and its progeny," *id.* (meaning that plaintiff's ¶¶ 43-45, 49, 50, 54 here would, alone, be "sufficient to satisfy *Twombly*"), Mr. Collier's allegations are far more specific, non-conclusory and based in fact than those in *Adams*, as detailed in section IV (A)(i) above.  Thus, even if this Court finds that plaintiff's allegations are conclusory, they are sufficient at this stage.

Defendants rely principally on an entirely distinguishable case to support their argument that plaintiff's allegations are conclusory.  [Doc. #9, ¶ 4].  In *McCauley v. Chicago*,

---

premature for the Court to dismiss from suit at this time"); *Thomas v. City of Galveston, Texas*, 800 F.Supp.2d 826, 841-45 (S.D. Tex. 2011);

12

671 F. 3d. 611, 613 (7th Circ. 2011), a woman was shot and killed by her ex-boyfriend, who had violated her order of protection against him (the order was in place because he had previously beaten her to the point of unconsciousness). Her father brought Section 1983 claims on behalf of her estate and based the claims on allegations that the City of Chicago "failed to have particularized safeguards in place for the special protection of domestic-violence victims." *Id.* at 619. The Court held that "at most," the allegations "plausibly suggest the uneven allocation of limited police prevention services, not that the City maintained an intentional policy of *omitting* police protection from female domestic violence victims." *Id.* (emphasis in the original). The Court maintained that the allegations that the City lacked special protection for victims of domestic violence "are entirely consistent with lawful conduct—here a lawful allocation of limited police resources." *Id.* In this case, however, plaintiff alleges conduct by The City which could never be considered "lawful." Specifically, plaintiff alleges that The City "fail[ed] to adequately train, supervise, control, discipline and dismiss its officers concerning the use of excessive force," C. ¶ 44, "has a policy of inadequately reporting, reviewing and investigating use of force and excessive force incidents," *id.*, "has persistently failed to respond, i.e., to identify, scrutinize, and take adequate corrective action concerning officers who repeatedly engage in a pattern of using unreasonable and/or excessive force and false arrests of citizens," C. ¶ 45, "condon[ed] and authorize[ed] RIPD officers' pattern and practice of using excessive force more frequently and egregiously against African-Americans and other minorities," C. ¶ 48, "condone[d] and facilitate[d], by their inaction, a "code of silence" within the RIPD, which further serves to ratify officers' misconduct and authorize it in the future," C. ¶ 50, and "directly encourage[d] and authorize[d] future abuses, like the ones involving plaintiff, giving officers license to use excessive force when and where they want" by failing to investigate or discipline

13

uses of excessive force, C. ¶ 49. Unlike the simple and "lawful" allocation of limited police resources in *McCauley*, plaintiff's allegations against The City constitute "unlawful" acts under *McCormick*, 230 F.3d at 324, *City of Canton*, 489 U.S. at 388-389 and *Palmer*, 327 F.3d at 594 (a plaintiff may establish that a city violated the Constitution by alleging that it failed to train its police officers with "deliberate indifference to the rights of persons with whom the police come into contact" and by showing that the city has a custom or policy that contributed to his injury).

> **B.** **Count VII Properly States a Claim for *Respondeat Superior* Liability**

Count VII sufficiently states a claim for The City's liability in tort. Plaintiff alleges that The City is "liable as principal for *all torts* committed by its agents [defendant officers] committed during the scope of their employment." C. ¶ 89 (emphasis added). Plaintiff also alleges that when "defendant officers committed the unlawful and unconstitutional acts against plaintiff detailed below, they were at all times acting under color of law and within the scope of their employment as police officers for the City of Rock Island." C. ¶ 14. In their brief, defendants argue only that *Respondeat Superior* does not apply to constitutional violations under Section 1983, and they do *not* attack plaintiff's claims of *Respondeat Superior* against The City for the *torts* which defendant officers committed. [Doc. #9, ¶ 9]. The latter category of claims survive. Indeed, "there is no dispute that under the doctrine of *Respondeat Superior*, an employer may be vicariously liable for the tortious acts of its employees committed within the scope of employment [and] a municipality may be held liable for the tortious acts of police officers acting in the scope of their employment." *Brown v. King*, 328 Ill. App. 3d 717, 721 (1st Dist. 2001) (internal citations omitted). Count VII states a claim of *Respondeat Superior* against the City for the officers' torts against plaintiff.

> **C.** **Count IX Properly States a Cause of Action for Punitive Damages Against the Individual Defendant Officers Under Section 1983 and Illinois Tort Law**

14

Plaintiff agrees to voluntarily dismiss without prejudice his claims of punitive damages against The City pursuant to 745 ILCS 10/2-102 (claims in tort) and *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981) (claims under Section 1983).  However, in their brief, defendants carelessly asked the Court to dismiss Count IX in its entirety, [Doc. #9, ¶ 9] even though plaintiff may recover punitive damages from the individual defendant officers if their actions are found to be intentional or "involve[] reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).[10]  Plaintiff specifically alleges that defendant officers "acted with actual intention or with a conscious disregard or indifference for the consequences when the health and safety of plaintiff was involved [and] with actual malice, with deliberate violence, willfully or with such gross negligence as to indicate a wanton disregard of the rights of others." C. ¶ 95.  Count IX properly states a claim.

## V.     CONCLUSION

For at least the reasons stated above, the Court should deny defendants' motion to dismiss Counts I-III (*Monell* only), VII (Respondeat Superior as to tort liability) and IX (Punitive Damages as to defendant officers' liability).  Plaintiff respectfully requests that the Court dismiss Count V and his claims of punitive damages against The City only, without prejudice.  In the event that the Court grants any other part of defendants' motion to dismiss, then plaintiff respectfully requests an opportunity to re-plead.

                Respectfully submitted,

                /s/ Al Hofeld
                Al Hofeld Jr.

---

[10] An analogous rule applies to plaintiff's tort claims under the Restatement (Second) of Torts (1979) § 908(2): "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others" (cited by *Smith,* 461 U.S. at 46-47).

Al Hofeld, Jr.
Hanan E. Van Dril
LAW OFFICES OF AL HOFELD, JR., LLC
and The Social Justice Project, Inc.
1525 East 53rd Street, Suite #832
Chicago, Illinois 60615
773-241-5844
al@alhofeldlaw.com

### NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Al Hofeld, Jr., attorney for plaintiffs, hereby certify that on February 26, 2015, filing and service of the foregoing ***Plaintiff's Response in Opposition to Defendants' Motion to Dismiss,*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ Al Hofeld
Al Hofeld Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and the Social Justice Project, Inc.
1525 East 53rd Street, Suite 832
Chicago, Illinois 60615
(773) 241-5844
(773) 241-5845 (FAX)
al@alhofeldlaw.com
www.alhofeldlaw.com