E-FILED
Friday, 30 September, 2016  03:52:18 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| MIKAIL COLLIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-4103-SLD-JEH |
| | ) | |
| ROCK ISLAND POLICE OFFICERS | ) | |
| PHILLIP LEDBETTER AND MICHAEL | ) | |
| WOOD, CITY OF ROCK ISLAND, and | ) | |
| UNKNOWN OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER

Plaintiff Mikail Collier is suing Defendants City of Rock Island ("the City"), Officer

Phillip Ledbetter, Officer Michael Wood, and unknown officers for the exercise of excessive

force during an arrest. Collier brings his claims under 42 U.S.C. § 1983 and Illinois law. He

seeks compensatory and punitive damages, injunctive relief, and attorney's fees. Before the

Court are the City and Ledbetter's Motion to Dismiss, ECF No. 31, and Wood's Motion to

Dismiss, ECF No. 32.  For the following reasons, the motions are GRANTED IN PART and, in

part, MOOT.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

On July 14, 2014, Collier and his cousin were walking along Sixteenth Avenue in Rock

Island, between Ninth and Seventh Streets. There was no sidewalk, and Collier walked on the

street. After Collier and his cousin turned into an alleyway, they were approached by Officer

---

[1] For the purpose of resolving a Federal Rule of Civil Procedure 12(b)(6) motion, the factual allegations in a
plaintiff's complaint are assumed to be true. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).
Therefore, unless otherwise noted, the facts set forth here are drawn from Collier's Amended Complaint, ECF No.
27.

Ledbetter, who had been following them for a few blocks. When Collier asked why Officer Ledbetter had been following him, Ledbetter replied "because you were walking in the street back there." Officer Ledbetter proceeded to arrest Collier by twisting Collier's wrist behind his back, grabbing him under the arm and slamming him to the ground. Collier's head struck the pavement. Officer Ledbetter held Collier down by pushing a knee into his neck, while other officers who had arrived on scene, including Michael Wood, assisted with the arrest. Collier did not resist. As Ledbetter placed Collier in a squad car, he stated "I owned your ass."

Collier filed suit on December 18, 2014. *See* Compl., ECF No. 1.  In addition to state and federal claims against Officers Ledbetter and Wood, he brought multiple constitutional claims against the City of Rock Island, pursuant to 42 U.S.C. § 1983 and the municipal liability doctrine of *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91 (1978). Collier alleged that the City maintained a "practice and custom of failing to adequately train, supervise, control, discipline and dismiss" officers who commit excessive force arrests as well as "a policy of inadequately reporting, reviewing and investigating" purported excessive force incidents. Compl. ¶ 44. Collier also alleged that his injury was caused by the City's "practice and custom" of employing too few African-American police officers to patrol African-American neighborhoods and by a "code of silence" endorsed by final city policy-makers. *Id.* ¶¶ 56, 59.

The Court dismissed Collier's complaint in its entirety. *See* Sept. 15, 2015 Order, ECF No. 25.  With regard to his *Monell* claim against the City, the Court noted Collier's failure to plead "non-conclusory facts even remotely suggesting a pattern or practice" of police misconduct and granted him leave to amend his complaint. *Id.* at 8. Collier filed an amended complaint, ECF No. 27, adding to his new complaint factual accounts of four allegedly excessively forceful

arrests of African-American individuals by Rock Island police officers in 2011, 2013, 2014 and 2015. Am. Compl. 8–13.

On October 14, 2015, the defendants filed their motions to dismiss.

## DISCUSSION

Collier's amended complaint, although it attempts to remedy some of the deficiencies noted in the Court's September 15, 2015 order, is still confusing. *See* Order 4 ("Plaintiff appears to misunderstand the difference between a claim for relief, which arises from a distinct transaction or occurrence, and the legal underpinnings of such a claim. The former should, per Rule 10(b), be separated into distinct counts; the latter should not."). The Court will attempt to summarize it.

Count I of the Amended Complaint appears to allege four separate claims against two separate defendants. It alleges that Ledbetter used excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, and alleges that the city was responsible for that use of excessive force; as to the former, on the basis of his actions on July 14, 2014, and as to the latter, on the basis of its failure to properly train or supervise Ledbetter pursuant to *Monell*. Am. Compl. 13–14. To make matters more complicated, although the Count is titled "excessive force," it also states that "Officer Ledbetter's false arrest and false imprisonment of plaintiff also violated his Fourth Amendment rights," *id.* at 13, thus apparently also alleging Ledbetter falsely arrested Collier, and again that this was a consequence of the City's policies and procedures. Count II appears to allege a *Monell* claim as to the City for unnamed officers' failure to intervene in Ledbetter's arrest as a consequence of deficient supervision or training, and possibly also a similar claim against Officer Wood in his individual capacity.[2] *Id.* 14–15. Count III is a

---

[2] It is a little difficult to tell what Plaintiff means, again; the Amended Complaint asserts that "On information and belief, one or more defendant officers had reasonable opportunities to prevent and/or stop some of the violations of

3

Fourteenth Amendment equal protection claim against both the City and "defendant officers"—presumably, Ledbetter, Wood, and the unknown officers. *Id.* at 15–16. Count IV asserts (perhaps[3]) state and federal law claims of assault and battery against the City, and Ledbetter and Wood "in their individual and[,]" redundantly, "official" capacities. *Id.* at 16–17. *See* Sept. 15, 2015 Order 3 n.2 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991))). Count V comprises (perhaps) state and federal false arrest and false imprisonment claims against both the City and Ledbetter and Wood (this time just individually). Am. Compl. 17. Count VI is a state law claim for intentional infliction of emotional distress against the same parties. *Id.* at 18.

Ledbetter and the City's motion to dismiss argues (1) that, to the extent that Counts I-VI seek to bring federal constitutional claims against the City under *Monell*, they still fail to allege sufficient facts to support the inference that the city could be liable for any violations, City Mot. Dismiss 4; (2) that insufficient facts are pleaded to support the inference that any individual defendant failed to intervene under Count II, *id.* at 8–9; (3) that equal protection is an inappropriate basis upon which to bring a claim for excessive force in an arrest, *id.* at 9–10; (4)

---

Plaintiff's constitutional rights, such as is [sic] false arrest, but stood by and failed to take any action." Am. Compl. 14. However, Ledbetter himself cannot be meant, and although Wood might be, Plaintiff does not allege it with specificity. That leaves the unknown officers. The Court notes that when charging unknown defendants, plaintiffs have "the burden of determining who is liable for [her] injuries and of doing so before the statute of limitations runs out." *Allen v. City of Chicago*, No. 08-CV-6127, 2009 WL 4506317, at *3 (N.D. Ill. Nov. 30, 2009). *See Powell v. Pauley*, No. 4:15-CV-04013-SLD-JEH, 2016 WL 1222207, at *1 (C.D. Ill. Mar. 28, 2016). The statute of limitations on Plaintiff's claim has likely run, *see id.*, leaving the failure to intervene claim on very shaky ground indeed, *see infra* p. 12. For purposes of the Court's recitation of Plaintiff's claims, however, the Court construes Count II in the manner here described.

[3] It is difficult to tell whether Illinois tort law claims, federal constitutional claims, or both, are intended. Plaintiff labels the preceding three counts "42 U.S.C. § 1983," but not the last three, supporting an inference that he intends these claims to be brought only under the law of Illinois. But then, Count IV alleges "willful indifference to plaintiff's constitutional rights," Am. Compl. 16, as does Count V. In an abundance of caution, Defendants appear to treat Plaintiff as potentially intending to bring federal constitutional claims under all six counts—a wise course on Defendants' part, given the state of the pleading.

4

that the false arrest claims contained in Counts I and V fail because the claim was previously dismissed, Collier admits in his pleadings that Ledbetter had probable cause to arrest Collier, Ledbetter has qualified immunity in any case, and the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), forbids Collier from challenging his arrest, City Mot. Dismiss 11–14.

Wood's motion to dismiss (1) repeats the previous motion's argument that insufficient facts are alleged to support a failure to intervene claim in Count II, Wood Mot. Dismiss 3–5; (2) repeats the previous motion's argument that equal protection is an inappropriate basis upon which to bring an excessive force arrest claim, *id.* at 5–6; (3) argues that Wood cannot be sued under Counts IV-VI because the statute of limitations bars the claims against him, *id.* at 6–8; (4) repeats the previous motion's multiple arguments against the false arrest claims in Counts I and V, *id.* at 8–11.

It is not surprising that the two motions to dismiss duplicate each other at times, since counsel for all defendants is the same, and the issues as between the City and Ledbetter on one hand, and Wood on the other, similar. In an attempt at clarity, the Court will first explain why the renewed federal claims against the City pursuant to *Monell* fail, and will then address Defendants' other arguments in turn, to the extent that they address non-*Monell* issues.

## I.    Legal Standard on a Motion to Dismiss

In reviewing a motion to dismiss, a court must accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). A court will dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In determining whether such a claim has been stated, a court should first identify pleadings that "because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009).  It should then take the remaining, well-pleaded factual allegations, "assume their

veracity[,] and . . . determine whether they plausibly give rise to an entitlement to relief."  *Id.*

This means that a complaint must provide "allegations that raise a right to relief above the

speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

**II.    Analysis**

      **a.  *Monell* Liability:  Counts I–VI**

            **i.  Legal Standard**

A municipality cannot be held liable for a 42 U.S.C. § 1983 claim under the doctrine of

respondeat superior.  *Monell*, 436 U.S. at 691.  Rather, liability may only be ascribed to a

municipality "if the unconstitutional act complained of is caused by:  (1) an official policy

adopted and promulgated by its officers; (2) a governmental practice or custom that, although not

officially authorized, is widespread and well settled; or (3) an official with final policy-making

authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009) (citing

*Monell*, 436 U.S. at 690).  An "allegation of a single incident of unconstitutional conduct by a

municipal employee usually does not establish a sufficient basis for suing [a] municipality,"

because it is generally not sufficient on its own to show a policy or practice.  *Strauss v. City of

Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) (citing *Powe v. City of Chicago*, 664 F.2d 639, 650

(7th Cir. 1981)).

To demonstrate municipal liability under the second prong of *Monell*, a custom-or-

practice theory, a plaintiff must show that the municipality's widespread custom or practice was

the "moving force" behind his injury.  *Board of County Com'rs of Bryan County v. Brown*, 520

U.S. 397, 400 (1997).  The Seventh Circuit has declined to adopt any "bright-line rules defining

a widespread custom or practice."  *Thomas*, 604 F.3d at 303 (internal quotation marks omitted).

Nor has it reached a conclusion as to "how frequently [unconstitutional conduct] must occur to impose *Monell* liability, except that it must be more than one instance, or even three." *Id.* (citing *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002)).  Ultimately, a plaintiff must persuade the finder of fact "that there is a policy at issue rather than a random event."  *Id.*

To successfully plead a custom-or-practice *Monell* claim, a plaintiff must also plead facts suggesting actual or constructive notice on behalf of the municipality—that is, the custom or practice alleged must be "so persistent and widespread that . . . policymakers should have known about the behavior." *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001); *see also Calusinski v. Kruger*, 24 F.3d 931, 936 (1994) (noting that, due to *Monell's* notice requirement, "subsequent conduct usually cannot be used to establish municipal liability.").  Where a municipality is alleged to have acquiesced to a harmful practice or custom, the plaintiff will ultimately have to show that policymakers were "deliberately indifferent" to the harm the custom or practice might precipitate. *Thomas*, 604 F.3d at 303; *Brown*, 520 U.S. at 407.  A policymaker will be deemed deliberately indifferent "where the plainly obvious consequence of [his or her] decision . . . would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411.

### ii.  Analysis

Collier claims that the insufficiency of the facts alleged to support a *Monell* claim against the City that the Court identified in his original complaint has been remedied by his addition of non-conclusory allegations that establish the existence of several City customs or practices causally responsible for his unconstitutional arrest.[4]  Resp. City Mot. Dismiss 8–15.  However, Collier's amendments do not rescue his custom-or-practice *Monell* claim.

---

[4] Collier alternatively argues that his amended *Monell* claim is sufficient to survive a 12(b)(6) motion under *Leatherman*, even if it rests on conclusory allegations.  As this Court has already explained, *Leatherman* does not

In order to successfully state a custom-or-practice *Monell* claim, Collier must allege facts sufficient to make plausible the existence of a City custom or practice that served as the moving force behind his injury.  His amended complaint re-alleges the existence of a number of practices that he claims to have been moving-force causal contributors to Ledbetter's alleged exercise of excessive force, including the City's systemic failure to "train, supervise, control, discipline and dismiss" officers who commit unconstitutional arrests, Am. Compl. 8; "inadequate reporting, reviewing and investigating" of excessive force incidents, *id.*; chronic underemployment of African-American police officers, *id.* at 12; and internal endorsement of a "code of silence" in protection of offending officers, *id.* at 13.  The Court found identical allegations in Collier's original complaint to be conclusory assertions of *Monell*'s "governmental practice or custom" requirement, thereby not entitled to the presumption of truth. Sept. 15, 2015 Order 6.

Excising these conclusory assertions from the plausibility analysis, the remaining facts offered in support of Collier's claim are limited to the detailed accounts of his 2014 arrest, and the allegedly forceful arrest of Derrell Dickerson in 2011, the allegedly excessively forceful arrest of Airlyn Powell in 2013, the allegedly excessively forceful arrest of Leonard Robinson in 2014, and the alleged use of excessive force resulting in the death of Darrin Langford in 2015. Lengthy though they may be, these additional allegations do not help to reveal a particular deficiency in the practices of the Rock Island Police Department that can plausibly be blamed for Collier's unconstitutional arrest.  A well-pleaded custom-or-practice *Monell* claim will not only "identify a custom or policy" as the source of a plaintiff's injury but also "specify what exactly that custom or policy was."  *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Offering as non-conclusory factual support merely the circumstantial weight of five supposedly

---

exempt § 1983 claims from the pleading requirements of *Iqbal*.  "The ordinary notice pleading standards of Rule 8, clarified by *Twombly* and *Iqbal*, do not represent the application of any heightened pleading standard." Sept. 15, 2015 Order 8.

unconstitutional arrests (none of which, as pleaded, have resulted in an adjudication of guilt or liability for the City), Collier leaves it to the Court to infer that the Rock Island Police Department's hiring, training, investigation and disciplinary practices are not only substandard but also the causal forces behind all of these incidents, such that the City should be held liable for its acquiescence.  This is not a reasonable inference, and Collier's shotgun suggestion of allegedly faulty practices cannot be relied upon to bridge the gap.  To successfully plead that the City's assent to deficient police practices caused his injury and the four others he describes in his amended complaint, Collier would need to plead facts that illustrate those deficiencies and not just their purported consequences.[5]

District courts in the Seventh Circuit have adopted a similar requirement for specificity. For instance, the Northern District of Illinois granted a defendant village's motion to dismiss a custom-or-practice *Monell* claim where the plaintiff's allegations comprised "completely conclusory, throw-it-against-the-wall-and-see-what-sticks language," failing to state a specific policy or practice for which the municipalities could be held liable.  *El-Bey v. Village of S. Holland*, No. 11 C 4949, 2012 WL 1658301, at *8 (N.D. Ill. May 11, 2012), *aff'd*, 513 F. App'x 603 (7th Cir. 2013); *see also Simpson v. Robb*, No. 1:13-CV-1263-SLD-JEH, 2014 WL 4817491, at *10 (C.D. Ill. Sept. 29, 2014) (granting City of Bloomington's motion to dismiss a

---

[5] Collier's intention in alleging facts about the four other arrests is somewhat unclear.  He indicates that their function is to show that "the City's policies, practices and customs . . . directly caused, and are exemplified by, the use of excessive force against numerous other Rock Island citizens."  Am. Compl. 8.  Taken in this light, these facts only circumstantially support the existence of a harmful practice or practices causally responsible for Collier's unconstitutional arrest.  However, these factual accounts may be alternatively construed as direct factual support for the City's perpetuation of a "code of silence," whereby each instance of municipal acquiescence toward police misconduct implicitly encourages future misconduct.  Am. Compl. 13.  Under this construal of the amended complaint, Collier's allegations of the city's failure to investigate or discipline the officers who exercised excessive force toward Derrell Dickerson, Airlyn Powell and Leonard Robinson would take the shape of non-conclusory factual support for a specific practice to which Collier's injury could be attributed.  Nevertheless, Collier's claim would not succeed.  Collier alleges that three instances of uninvestigated police misconduct occurred prior to his arrest in 2014.  In none of these instances did an administrative or judicial finding confirm that an unconstitutional arrest had occurred.  These isolated incidences of alleged misconduct simply do not make plausible a City custom of silence that could reasonably be cited as the moving force that encouraged Officer Ledbetter's individual actions.

9

*Monell* claim where Plaintiff "simply describe[d] BPD training policies as inadequate, a conclusory allegation that cannot sustain his claim").  Arguably, to require Collier to specify more narrowly the custom or practice that could entail the City's *Monell* liability raises the concern that without the benefit of discovery, he may be foreclosed from acquiring the information he needs to draft a sufficient pleading.  The Seventh Circuit has acknowledged this reservation, reasoning nevertheless that under less stringent *Monell* pleading requirements "all counsel would need to do would be to concoct some explanation of [a] plaintiff's injury that implicated the municipality—for example, a custom and practice of hiring as police officers those with a history of brutality—and the doors of the federal courtroom would swing open." *Strauss*, 760 F.2d at 769.

   In addition to inadequately identifying an injurious custom or practice, Collier has failed to plead facts sufficient to fulfill *Monell*'s notice requirement.  He has not plausibly alleged that City policymakers deliberately disregarded the plain and obvious consequences of the custom or practice, or that it was so "persistent and widespread" that policymakers should have been aware of it.  *Latuszkin*, 250 F.3d at 505.  Although Collier repeatedly alleges that the City's improper police training, inadequate investigation, ineffective discipline and insufficient hiring are "pervasive practice[s]," Am. Compl. 13, the allegation of their pervasiveness is a conclusory assertion merely echoing *Monell*'s "widespread and well-settled" requirement.  It is not entitled to the presumption of truth.  Setting aside this blanket allegation, the Court is again left to weigh only the facts pleaded in the accounts of the arrests of Derrell Dickerson, Airlyn Powell, Leonard Robinson, Darrin Langford and Collier himself.

   Pleading isolated incidents of municipal misconduct is generally insufficient to establish a "widespread custom or practice."  *Lewis v. Consolidated High Sch. Dist. No. 230*, 991 F.2d

1316, 1326 (7th Cir. 1993) (granting defendant school district's motion to dismiss due to

Plaintiff's failure to "allege that there is a widespread practice of nonconsensual and

unconstitutional searches of students in [the] District"); *see also Gustafson v. Jones*, 117 F.3d

1015, 1016–17 (7th Cir. 1997) (holding that allegations of isolated incidents of transferring or

not promoting police officers did not suffice to plead a pattern or practice); *see also Saenz v. City

of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (affirming the lower court's dismissal of

Plaintiff's *Monell* custom-or-practice claim, even though the complaint alleged "twenty-one

previous incidents, spanning a period of nineteen years, involving an individual killed by a police

officer").  Collier has not alleged that every arrest made by one of the City's officers—or even a

substantial percentage thereof—results in a constitutional injury. On the contrary, he has alleged

that excessive force was exercised in five of the presumably hundreds of arrests made by Rock

Island police between 2011 and 2015—and done so in such a way as to raise no other inference

than that lawsuits were filed, in itself no indicator of unconstitutional behavior by the police. The

inference cannot reasonably be drawn from these accounts that any excessive force exercised

against these individuals was a product any practice or custom that the City should have or

would have identified and remedied had it not been deliberately indifferent.  Rather, these facts,

even if each and every officer in each alleged case had in fact engaged in constitutional

violations, plausibly establish only the isolated misconduct of five individual officers.

Because Collier does not plead facts that plausibly establish a specific City custom or

practice that served as the moving force behind his constitutional injury, and because he fails to

support his claim with allegations plausibly suggesting that the forceful arrest he suffered was

the product of a pervasive pattern of misconduct toward which the City was deliberately

indifferent, Collier's amended complaint fails to adequately state a custom-or-practice *Monell* claim. The City's motion to dismiss the *Monell* claim in Collier's amended complaint is granted.

Since Collier's response to the Court's invitation to allege his *Monell* claim plausibly was simply to point out that other lawsuits have been filed against the City alleging police brutality, and to repeat legal arguments the Court has already rejected, it is appropriate that all of his *Monell* claims—that is to say, in the interest of extreme clarity, all of his federal constitutional claims against the City of Rock Island—be dismissed with prejudice. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted . . . if it is clear that any amendment would be futile); *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.").

### b.   Count II:  Failure to Intervene

Defendants argue that Count II of the amended complaint does not provide adequate notice to Defendants of which of them is alleged to have failed to intervene and when.  City Mot. Dismiss 8–9; Wood Mot. Dismiss 3–5.  Without arguing the point, Collier "respectfully requests that the Court dismiss Count II (failure to intervene), without prejudice."  Resp. City. Mot. Dismiss 15.

The Court grants Collier's motion to dismiss the claim without prejudice.  Fed. R. Civ. P. 41(a)(2).[6]  The Court notes that, as it is currently pleaded, Defendants' motions to dismiss the

---

[6] Under other circumstances, Collier would not need to ask the Court to dismiss his claim.  *See* Fed. R. Civ. P. 41(a)(1)(A) (i) (explaining that a plaintiff may dismiss an action simply via notice before the opposing party has served an answer or motion for summary judgment).  However, because Defendants have answered, ECF Nos. 33, 34, Collier would need a stipulation signed by all parties who have appeared, Fed. R. Civ. P. 41(a)(1)(A)(ii), or, as he now seeks, an order of the Court pursuant to Rule 41(a)(2) (permitting dismissal by the court at Plaintiff's request "on terms that the court considers proper").

claim are meritorious.  "[O]ne or more defendant officers" are alleged to have "had reasonable opportunities to prevent and/or stop some of the violations of plaintiff's constitutional rights, such as false arrest, but stood by and failed to take any action."  Am. Compl. 14.  But who and when?  The arrest itself is clearly alleged to have taken place when only Officer Ledbetter was on the scene, *id.* at 5, and then four others, one of them Wood but the rest unnamed, are alleged to have shown up sometime afterward and handcuffed Collier, *id.*  Which officers failed to intervene?  What actions of Ledbetter's are they alleged to have witnessed and had an opportunity to intervene in?  Plainly not the arrest itself.  The fact that, as observed *supra* p. 3 note 2, the statute of limitations on "unnamed officers" may well have run, or that it may not be logically possible for other officers to have intervened in many of the actions alleged, reveals the extent to which the claim as currently stated does not comport with the minima of pleading in federal court articulated by the Federal Rules of Civil Procedure.  The Defendants must have fair notice of the claims against them, so that they can contest those claims either factually or, as here, via a motion to dismiss.  *See* Fed. R. Civ. P. 8(a) (requiring a complaint to contain "a short and plain statement of the claim showing the pleader is entitled to relief"); *Tamayo*, 526 F.3d at 1081 ("A plaintiff . . . must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . .").

### c.  Count III:  Equal Protection

Defendants argue that Count III of the amended complaint, which claims that Collier's right under the Fourteenth Amendment to the equal protection of the laws was violated, arises from exactly the same facts as Count I (a Fourth Amendment claim), and that constitutional claims arising from excessively forceful arrests are exclusively to be pleaded under the Fourth Amendment.  City Mot. Dismiss 9–10; Wood Mot. Dismiss 5–6.  Collier responds that equal

protection claims arising from racially motivated arrests can be made.  Resp. City Mot. Dismiss 6–8.

Collier is correct that *Graham v. Connor*, 490 U.S. 386 (1989), upon which Defendants rely, did not compare the relative appropriateness of equal protection and Fourth Amendment claims, but rather that of substantive due process and Fourth Amendment claims.  *See Graham*, 490 U.S. at 388 ("We hold that such [excessive force claims] are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard.").  This is a distinction without a difference, however.  *Graham* held that, when an excessive force claim arises from an arrest, the right claimed to have been violated is the Fourth Amendment-protected right to be free of such seizures, as opposed to any other constitutional right, whether under the equal protection or substantive due process portions of the Fourteenth Amendment.  *See id.* at 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . .").  Collier's excessive force claim arises in the context of the arrest of a free citizen.  "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  *Id.* at 395.  So too, the Fourth Amendment is more appropriate than an equal protection analysis.

Collier could certainly try to make out an equal protection claim on the basis of an arrest, but in order to do so, he would have to allege that "[he had] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

*Hanes v. Zurick*, 578 F.3d 491, 494 (7th Cir. 2009) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, (2000)).  But the only allegation Collier makes in this vein is that "[d]efendants would not have acted in the same manner toward plaintiff on July 14, 2014 if plaintiff had been white."  Am. Compl. 15.  The allegation is unsupported by any other allegations of fact.  Mere allegation of a prohibited animus, without the slightest scintilla of alleged reason to think it true, is insufficient to make out an equal protection claim.  *See, e.g.*, *Kim v. Ritter*, 493 F. App'x 787, 789–90 (7th Cir. 2012) (affirming district court's dismissal of equal protection claims against officer defendants when plaintiff only alleged that an officer asked her about her national origin).  The cases Collier cites in his response are uniformly inapposite or contradictory of his argument.  *See, e.g.*, Resp. City Mot. Dismiss 7 (citing *Brown v. City of Oneonta, New York*, 221 F.3d 329, 338 (2d Cir. 2000) (holding that complaint did not sufficiently allege discriminatory intent to make out equal protection claim).

Count III fails to state a claim.  It is dismissed.

### d.  Counts I and V:  False Arrest

Defendants argue that the claims against Ledbetter in Count I and Count V, Fourth Amendment and state law false arrest claims, must be dismissed because:  Collier previously dismissed the claim, *see* Sept. 15, 2015 Order 9; Ledbetter is protected by qualified immunity; Ledbetter had probable cause to arrest Plaintiff; and *Heck* bars the claim.  City Mot. Dismiss 11–14.  Collier once more asks that Count V (and indeed, the other state law tort claims, Counts IV and VI) be dismissed, again without prejudice.  Resp. Wood. Mot. Dismiss 5–6.  He also asks that Count I, insofar as it contains a false arrest claim, be dismissed.  City Mot. Dismiss 2.  Once again, the request that the state law claims be dismissed is granted pursuant to Rule 41(a)(2), as is the request that the federal false arrest claim be dismissed.

Collier states that he already agreed to dismiss the false arrest claim contained in Count

V, but repleaded it "to preserve his rights on appeal."  City Mot. Dismiss 2.  A claim cannot be

substantively withdrawn but nominally or halfheartedly pleaded "to preserve rights on appeal."

Either a claim is brought or it is not.[7]  If Collier wishes to appeal the eventual denial of a claim,

he must plead the claim; he cannot bypass the adjudicatory competence of the district court with

a hopeful eye to the Court of Appeal, which can only review the final judgments of the district

court.  28 U.S.C. § 1291.

To the extent that Collier believes he must replead claims that the Court has dismissed for

legal insufficiency pursuant to Rule 12(b)(6), he is also mistaken.  As the Seventh Circuit has

repeatedly explained, litigants do not need to replead claims that the court has dismissed on their

merits in order to preserve them for appeal.  *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683

(7th Cir. 1990) ("It is not waiver—it is prudence and economy—for parties not to reassert a

position that the trial judge has rejected. Had the plaintiffs repleaded their [original claim]

without alleging loss causation, the judge would have dismissed the charge, not only with

prejudice but with annoyance."); *see also Smith v. Nat'l Health Care Services of Peoria*, 934

F.2d 95, 98 (7th Cir. 1991) ("This court in *Bastian* stated that dismissed claims need not be

included in an amended complaint, because the final judgment brings up all previous rulings in

the case."); *Serritella v. Markum*, 119 F.3d 506, 512 n.6 (7th Cir. 1996) ("[Plaintiff's counsel's]

concern that he was required to replead the dismissed claim lest he be found to have waived the

_____

[7] It is of no moment that Collier's claims under various Counts of his amended complaint are here dismissed by the Court's order pursuant to Rule 41(a)(2).  These are not adjudications on the merits of the claims, but rather, as the Seventh Circuit has explained, grants of permission to Collier to voluntarily dismiss his claims:

> Thus the plaintiff can dismiss without the court's permission, and without prejudice to his being able to bring a new suit, if the defendant has not yet answered the complaint or moved for summary judgment (Rule 41(a)(1)(i)); or with the court's permission, but again without prejudice unless the court specifies that the dismissal is with prejudice, at any later time (Rule 41(a)(2)).

*McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985).

issue on appeal has no foundation in the law of this Circuit (or any other of which we are aware).").

Collier is cautioned not to attempt to replead claims that have been voluntarily or involuntarily dismissed in an effort to "preserve" them.

### e.  Counts IV–VI:  Statute of Limitations (Wood)

Wood argues that counts IV–VI, alleging assault and battery, false arrest and imprisonment, and intentional infliction of emotional distress, must be dismissed as to him because Wood was not named as a defendant until September 29, 2015, more than one year from the date of the alleged injury.  Wood Mot. Dismiss 6–8.  Collier, for his part, asks that Counts IV–VI be dismissed without prejudice, a request that, as explained above, the Court grants.

### f.  Summary of Remaining Claims

Because of the complexity and number of the  claims brought and claims dismissed thus far, and because Collier's amended complaint failed to clearly group separate claims for relief into separate counts, a brief summary of the Court's rulings here, and what remains of Collier's claims, is in order.

- All federal law claims against Defendant City of Rock Island are dismissed with prejudice.

- Count I, the only Count now remaining, thus consists only of a 42 U.S.C. § 1983 excessive force claim against Defendant Ledbetter, because the 42 U.S.C. § 1983 false arrest claim was dismissed at Collier's request.

- Count II, the 42 U.S.C. § 1983 failure to intervene claim, is dismissed at Collier's request.

- Count III, the 42 U.S.C. § 1983 equal protection claim, is dismissed for failing to state a claim.

- Counts IV–VI, the state law tort claims, are dismissed at Collier's request.

## CONCLUSION

Accordingly, Defendant City of Rock Island and Ledbetter's Motion to Dismiss, ECF No. 31, and Defendant Wood's Motion to Dismiss, ECF No. 32, are GRANTED IN PART and, in part, MOOT.  No further claims against them remaining, the Clerk is directed to terminate Defendant City of Rock Island and Defendant Michael Wood.

Entered this 30th day of September, 2016.

s/ Sara Darrow
_____
SARA DARROW
UNITED STATES DISTRICT JUDGE